## State of Vermont v. Shawn E. Brown

## State of Vermont v. Richard A. Peryer

[676 A.2d 350]

Nos. 94-277 & 94-380

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed March 22, 1996

*Robert L. Sand,* Department of State's Attorneys, Montpelier, for Plaintiff-Appellee.

*Robert Appel,* Defender General, and *William A. Nelson,* Appellate Defender, Montpelier, for Defendants-Appellants.

**Johnson, J.** Defendants appeal felony sentences imposed following convictions for driving under the influence of intoxicating liquor (DUI), third offense. 23 V.S.A. § 1210(d). Defendants contest the use

of their prior uncounseled DUI convictions to support the felony third-offense sentences on two grounds: (1) that enhancing third-offense sentences based on prior uncounseled convictions violates the right to counsel under the federal and state constitutions; and (2) that prior uncounseled convictions in which defendants received suspended sentences violate our decision in *State v. DeRosa*, 161 Vt. 78, 633 A.2d 277 (1993), and cannot be used to enhance a sentence for a later offense. Defendants' first claim is addressed in *State v. Porter*, 164 Vt. 515, 671 A.2d 1280 (1996). In *Porter*, this Court held that a defendant's prior uncounseled DUI conviction, for which the defendant was sentenced only to pay a fine, could be used to support a felony third-offense DUI sentence.[1] *Porter*, 164 Vt. at 521, 671 A.2d at 1284. In this opinion, we address only defendants' second claim. Although we hold that prior convictions that violate *DeRosa* may not be used for enhancement purposes, we find that defendants have not made a sufficient showing that their prior convictions were obtained in violation of *DeRosa*. Accordingly, we affirm defendants' felony third-offense sentences.

## I.

Defendant Brown's 1993 felony sentence for DUI, third offense, was predicated on a 1992 conviction, for which he was sentenced to pay a fine of $200, and on a 1985 conviction, for which he received a zero-to-nine month sentence, all suspended. In both cases, Brown entered pro se guilty pleas. The record of the 1992 conviction indicates that counsel was denied because no jail term would be imposed. For the 1985 conviction, the record produced by Brown indicates only that counsel was denied, without giving the reason for the denial. On appeal, the State has produced two documents that indicate that Brown was denied counsel in 1985 because he was not financially eligible, and that he waived his right to be represented by counsel in that proceeding.

Defendant Peryer's 1994 felony sentence for DUI, third offense, was predicated on a 1986 conviction, for which he received a zero-to-twelve month sentence, all suspended, and on a 1985 conviction, for which he received a $200 fine and a thirty-day suspended sentence. Peryer was represented by counsel in the 1986 proceeding. Peryer produced a record for the 1985 conviction indicating only that counsel

---

[1] Although I dissented from the Court's decision in *Porter*, that holding stands as binding precedent, and must be applied in these cases as well.

was denied, without giving the reason for denial. Again, on appeal the State has produced documents that indicate that Peryer was denied counsel in 1985 because he was not financially eligible, that he filed a notice of intent to hire a lawyer, and then later signed a waiver of counsel.

█ Defendants moved to strike the portions of the State's printed cases containing these additional documents, and to strike all references to the documents in the State's briefs. The documents were not among the original papers and exhibits on file in the trial court and consequently are not part of the record on appeal. V.R.A.P. 10(a); *State v. Williams*, 143 Vt. 396, 406, 467 A.2d 667, 672 (1983). Having failed to introduce the documents as evidence below, the State may not attempt to "proffer [evidence] through the 'back door' of a printed case." *Williams*, 143 Vt. at 406, 467 A.2d at 672. Defendants' motion to strike is granted. For the purposes of this opinion, we will disregard the additional documents presented by the State.

## II.

In *DeRosa*, we held that when a trial judge denies counsel to an indigent defendant because a sentence of imprisonment will not be imposed, the trial judge may not "impose on defendant a conditionally suspended sentence and probation." *DeRosa*, 161 Vt. at 81, 633 A.2d at 279. We specifically grounded our decision in the Public Defender Act (PDA), 13 V.S.A. §§ 5201-5277, although we noted that "[o]ur interpretation of the PDA [was] in accord with federal precedent defining a defendant's federal constitutional right to assistance of counsel." *DeRosa*, 161 Vt. at 81, 633 A.2d at 279.

The *DeRosa* violations alleged by defendants occurred several years before our decision in *DeRosa*, at a time when, according to defendants, "trial judges commonly refused to assign counsel" although intending to impose a suspended sentence. The State argues that the rule announced in *DeRosa* should be limited in its application to cases on direct appeal at the time it was decided and subsequent cases. Following the State's approach, indigent defendants who were denied counsel and sentenced to a suspended sentence and probation, and whose convictions were final before *DeRosa* was decided, would be subject to sentence enhancement on the basis of the prior uncounseled conviction. Only those defendants whose prior convictions were not yet final when *DeRosa* was decided would receive the benefit of our decision in that case. In support of its argument, the

State relies on our decision in *State v. Shattuck*, 141 Vt. 523, 529, 450 A.2d 1122, 1125 (1982). In *Shattuck* we adopted the common-law rule on retroactivity, which provides ""'that a change in law will be given effect while a case is on direct review.'"" *Id.* (quoting *United States v. Johnson*, 457 U.S. 537, 543 (1982) (quoting *Linkletter v. Walker*, 381 U.S. 618, 627 (1965)).

We also noted in *Shattuck*, however, that "[t]he threshold inquiry in cases raising the issue of the retroactivity of judicial decisions is whether a new rule of law has been announced." *Id.* at 528, 450 A.2d at 1124. We acknowledged that our decision in *State v. Gardner*, 139 Vt. 456, 433 A.2d 249 (1981), which overruled an earlier decision, "plainly satisfie[d] that requirement," *Shattuck*, 141 Vt. at 528, 450 A.2d at 1124, because *Gardner* changed "'the meaning of a statute as determined by prior decision.'" *Id.* (quoting *State v. Burstein*, 427 A.2d 525, 531 (N.J. 1981)). In *DeRosa*, however, we did not announce a new rule, in the sense of overruling or significantly altering a prior decision; we merely interpreted the PDA in a case of first impression. See *People v. Garcia*, 684 P.2d 826, 830-31 (Cal. 1984) (decision providing first authoritative interpretation of felony-murder statute did not constitute clear break with past that would prevent retroactive application of rule). Nor was our decision in *DeRosa* "entirely new and unanticipated." *Johnson*, 457 U.S. at 551. We relied in *DeRosa* upon the plain language of the PDA, and also noted that several federal courts of appeal had reached the same result under the federal constitution. *DeRosa*, 161 Vt. at 82, 633 A.2d at 279.

■ We have previously observed that the "prospectivity doctrine is an exception to the general rule that judicial decisions are applied retroactively." *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 377, 566 A.2d 1323, 1332 (1989); see also *Garcia*, 684 P.2d at 830 (ordinary assumption of retrospective operation applies where decision does not establish new rule or standards, but only elucidates and enforces prior law). We therefore hold that our interpretation of the PDA announced in *DeRosa* applies with equal force to earlier convictions that may be used for enhancement purposes under a recidivist statute such as 23 V.S.A. § 1210(d). Cf. *Halliday v. United States*, 394 U.S. 831, 833-34 (1969) (Harlan, J., concurring) (arguing in postconviction relief case that Court's prior decision interpreting Fed. R. Crim. P. 11 should be applied to all cases arising after amended version of rule became effective); *id.* at 835 (Black, J., dissenting) (arguing that retroactivity discussion was unnecessary because rule

should be enforced in any case for which relevant portions of rule were in effect).

Even if *DeRosa* had announced a "new rule" like that at issue in *Shattuck*, our holding in *Shattuck* would not necessarily bar the application of that rule to defendants' prior convictions. Neither *Shattuck* nor the *Johnson* decision on which *Shattuck* relied specifically addressed the application of a new rule to cases that had become final before the rule was announced. Rather, the question facing both Courts was whether to apply a new rule retroactively to cases not yet final on appeal when the rule was announced, or to apply the rule only prospectively. *Shattuck*, 141 Vt. at 527, 450 A.2d at 1123; *Johnson*, 457 U.S. at 541. In *Johnson*, the Court avoided the issue of retroactive application to convictions already final. 457 U.S. at 547 n.10 (noting that "[m]embers of the Court continue to offer views on this troublesome question"); see also *id.* at 563-64 (Brennan, J., concurring) (joining Court's opinion on understanding that decision does not disturb retroactivity precedents as applied to convictions final at time of decision). In *Shattuck* we also noted that "extraordinary cases" might require full retroactive application. *Shattuck*, 141 Vt. at 529, 450 A.2d at 1125.

▮ The rule announced in *DeRosa* could be considered such an "extraordinary case." The Supreme Court noted in *Johnson* that it has "regularly given complete retroactive effect to new constitutional rules whose major purpose 'is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials.'" *Johnson*, 457 U.S. at 544 (quoting *Williams v. United States*, 401 U.S. 646, 653 (1971) (plurality opinion)). The right to assistance of counsel is not only a fundamental element of due process, but also plays a crucial role in maintaining the integrity of the truth-finding process by ensuring that a defendant has every opportunity to present defenses.

The United States Supreme Court has, in fact, given full retroactive effect to right-to-counsel decisions. In *Burgett v. Texas*, 389 U.S. 109, 114 (1967), the Court held that a defendant's prior uncounseled felony conviction could not be used to enhance his sentence under a recidivist statute, although the prior conviction was obtained before *Gideon v. Wainwright*, 372 U.S. 335 (1963), was decided. The Court noted that the *Gideon* ruling making it unconstitutional to try a defendant for a felony in state court unless the defendant had a

lawyer or had validly waived one "was not limited to prospective applications." *Burgett,* 389 U.S. at 114.

### III.

The State maintains that even if defendants' prior uncounseled misdemeanor convictions, for which they received suspended sentences, violate *DeRosa,* those convictions nonetheless should be considered valid for the purpose of enhancing defendants' DUI sentences. The State argues that because defendants did not suffer "actual imprisonment," *Scott v. Illinois,* 440 U.S. 367, 373 (1979), for their prior offenses, their right to counsel under the Sixth Amendment to the United States Constitution was not violated.

United States Supreme Court precedent establishes that convictions obtained in violation of the Sixth Amendment right to counsel may not be relied upon for sentence-enhancement purposes. *Custis v. United States,* 511 U.S. 485, 495, 114 S. Ct. 1732, 1738 (1994); *United States v. Tucker,* 404 U.S. 443, 448-49 (1972); *Burgett,* 389 U.S. at 115; see also *Nichols v. United States,* 511 U.S. 738, 748-49, 114 S. Ct. 1921, 1928 (1994) (holding that uncounseled misdemeanor conviction valid under *Scott* because no prison term was imposed is also valid when used to enhance punishment for subsequent offense). The State apparently concedes that if a defendant had received a suspended sentence for a prior uncounseled conviction, but had violated probation and spent some time in prison, that prior conviction could not be used for enhancement purposes. If we followed the State's reasoning, then, only defendants who violated probation for their prior offenses would receive the benefit of our decision in *DeRosa.*

We see no reason to reach such an absurd result. A conviction obtained in violation of an indigent defendant's right to counsel under the Public Defender Act is no less invalid, for purposes of Vermont law, than a conviction obtained in violation of the defendant's constitutional rights. A prior conviction for which a defendant was denied counsel and sentenced to a suspended sentence may not be used for enhancement purposes, whether or not the defendant was actually imprisoned for the offense.

### IV.

The final question facing this Court is to determine how the trial courts should identify those prior convictions that violate *DeRosa* and may not be used for sentence enhancement. As we noted

in *DeRosa*, the PDA is violated "when a trial judge denies counsel to a needy person by determining that [the] defendant will not be sentenced to a period of imprisonment" and then imposes a conditionally suspended sentence and probation. *DeRosa*, 161 Vt. at 81, 633 A.2d at 279. A defendant may have been denied counsel because he or she was not needy, or a defendant may have validly waived the right to counsel.[2] In such cases, the prior uncounseled convictions may be used for enhancement purposes.

The State addresses this issue by arguing that defendants lack standing,[3] or alternatively have failed to overcome the "presumption of regularity" that attaches to the prior convictions, because defendants have not shown that (1) they were indigent at the time of the prior convictions, (2) they requested appointed counsel, and counsel was denied, and (3) they did not validly waive their right to counsel in the earlier proceeding. Defendants maintain that a record indicating merely that counsel was denied and a suspended sentence imposed is a sufficient showing to establish a right-to-counsel violation under *DeRosa*, or at least to shift the burden of proof to the prosecution to establish that counsel was properly denied in the earlier proceeding.

We agree with defendants that the issue here is the proper allocation of burdens, not whether defendants have standing to make this claim. See *Parke v. Raley*, 506 U.S. 20, 28 (1992) (discussing Kentucky's burden-of-proof scheme for permitting recidivism defendants to attack validity of prior convictions). Moreover, defendants apparently recognize that they must bear some burden of showing that their prior convictions were (or may have been) obtained in violation of *DeRosa*. Without any suggestion by a defendant that a prior conviction was procedurally irregular, the State cannot be expected in every case to affirmatively prove not only the fact of the prior conviction, but also that the defendant was not improperly denied counsel.

Here, the documents produced by defendants do not show that their prior convictions violated *DeRosa*. Although the records indi-

---

[2] As we noted in *DeRosa*, however, "a waiver of counsel 'made . . . only after the court ha[s] denied [defendant's] request for a lawyer a short while earlier' is not an effective waiver of the right to counsel." *State v. DeRosa*, 161 Vt. 78, 79 n.2, 633 A.2d 277, 278 n.2 (1993) (quoting *State v. Quintin*, 143 Vt. 40, 43, 460 A.2d 458, 460 (1983)) (alteration in original).

[3] The State's claim that defendants lack standing because they were in fact not indigent at the time of the prior convictions and were therefore not entitled to appointed counsel must fail, because it is supported only by the documents that we have stricken from the State's printed case.

cate that defendants were denied counsel, the reason for that denial is not given. Although defendants may have been denied counsel because the trial judge did not intend to impose a sentence of incarceration, it is equally plausible that counsel was denied because defendants were not needy. Given this ambiguity in the records of the prior convictions, defendants were obliged to show that counsel was *improperly* denied.

Defendants argue that this case is analogous to the facts of *Burgett*. There, the Supreme Court held that the defendant's prior uncounseled felony conviction could not be used for enhancement purposes and did not require the defendant to show affirmatively that he had not waived his right to counsel in the prior proceeding. *Burgett*, 389 U.S. at 114-15. Because the prior conviction at issue in *Burgett* occurred before *Gideon* was decided, the Court in effect assumed that the defendant could not have waived a right that he did not possess. See *Parke v. Raley*, 506 U.S. at 31. Defendants suggest that, because their prior convictions predate *DeRosa*, we should similarly assume that they were improperly denied counsel in the earlier proceedings.

Such an assumption is unwarranted under these circumstances. In *Burgett*, the defendant could not have "waived" his right to counsel; waiver is an intentional relinquishment of a known right. One cannot intentionally or knowingly relinquish a right one does not have. Here, however, there are two possible reasons why defendants might have been denied counsel, one proper (defendants were not needy), and one improper (the trial judges did not intend to impose a sentence of incarceration). We have no reason to make either assumption.

On this point, we find the Supreme Court's reasoning in *Parke* persuasive. In *Parke*, the defendant in a recidivist proceeding argued that his two prior burglary convictions were invalid because no transcripts existed of the prior proceedings, and hence, the records did not affirmatively show that the defendant's pleas were knowing and voluntary. The trial court held that the defendant had failed to make a sufficient showing to overcome the presumption of regularity attaching to the prior convictions. *Parke*, 506 U.S. at 23. The Court held that placing a burden of production on the defendant — in essence, requiring the defendant to do more than simply point to inadequate records as proof of invalidity — did not violate the defendant's due process rights. *Id.* at 34.

As the Court emphasized in *Parke*, a defendant is not always at a disadvantage in reconstructing the earlier proceeding. In fact,

"the defendant may be the only witness who was actually present at the earlier proceeding." *Id.* at 32. A defendant need not produce court records that affirmatively prove that counsel was denied in violation of *DeRosa* if no such records exist. A defendant could testify that the trial judge, when denying counsel, had promised not to impose a sentence of incarceration, or that he or she was indigent at the time but was never questioned about financial resources. To challenge the use of a prior conviction for sentence enhancement purposes based on *DeRosa*, however, a defendant must show that counsel was denied improperly. As defendants have not met this burden, we affirm their convictions.

*Affirmed.*

**Morse, J.**, concurring. I disagree with Part III of the Court's opinion. The Court finds absurd that "only defendants who violated probation for their prior offenses would receive the benefit of our decision in *DeRosa*." 165 Vt. at 85, 676 A.2d at 354. The "absurdity" arises by assuming the accuracy of the State's apparent concession that "if a defendant had received a suspended sentence for a prior uncounseled conviction, but had violated probation and spent some time in prison, that prior conviction could not be used for enhancement purposes." In fact, the concession is inaccurate. In *State v. DeRosa*, 161 Vt. 78, 633 A.2d 277 (1993), we held that a suspended sentence must be vacated when the court, in denying an eligible defendant appointed counsel, promised that she would not be imprisoned. *Id.* at 83, 633 A.2d at 280. We stated that "the error below was only in the sentence" — the suspended term of imprisonment — and struck the offending portion, leaving the fine component of the sentence intact. *Id.* DeRosa, too, had been convicted of DUI, and once the mistake in her sentence had been repaired, I doubt this Court would have ruled that her conviction would be unavailable to enhance a future DUI sentence.

It simply is not true that, under *DeRosa*, probation violators would have an advantage in a case like this if they had served time as a result of the violation. The validity of a sentence does not turn on whether the terms of probation were violated. On the contrary, the *DeRosa* defense is available to every eligible defendant who was denied counsel and received a suspended sentence. If defendants choose not to avail themselves of the *DeRosa* remedy, it does not follow that they should gain an advantage in later enhancement cases by having their prior convictions ignored. The criminal justice system

is not a board game, "land on Chance," and you get a "'Get Out of Jail Free' card." Rights given up in one case are not "rain checks" for future prosecutions.

We were clear in *DeRosa* that the conviction is unaffected by an erroneous suspended sentence. Only the suspended sentence may be challenged. The reasoning of *State v. Porter*, 164 Vt. 515, 671 A.2d 1280 (1996), applies here. Notwithstanding the *DeRosa* violations, these convictions can be used for sentence enhancement. I am authorized to say that the Chief Justice joins this concurrence.